**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 JUN 10  P 3: 32

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| CHARLES R. GOLDSTEIN, | ) |
|     CHAPTER 7 TRUSTEE FOR | ) |
|     K CAPITAL CORPORATION | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | ) **Civil No.:** _____ |
|     v. | ) |
| | ) |
| FEDERAL DEPOSIT INSURANCE | ) |
| CORPORATION, | ) |
|     RECEIVER OF K BANK. | ) **ELH11CV1604** |
| | ) |
| SERVE ON: | ) |
| Mr. Robert E. Feldman | ) |
| Executive Secretary | ) |
| Federal Deposit Insurance Corporation | ) |
| 550 17th St., NW | ) |
| Washington, DC 20429 | ) |
| | ) |
|     Defendant. | |

---

## COMPLAINT

Plaintiff, Charles R. Goldstein, Chapter 7 Trustee (the "Trustee") for K Capital

Corporation ("K Capital"), a bank holding company, hereby files this Complaint against the

Federal Deposit Insurance Corporation ("FDIC"), receiver of K Bank, and as grounds states as

follows:

### Parties, Venue, Jurisdiction

1.     Plaintiff is the Trustee for K Capital, which filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code on November 8, 2010 in the District of Maryland.

2.     Defendant is the receiver of K Bank, a bank chartered in Maryland that did

business in Maryland.

1

3.      Pursuant to 12 U.S.C. § 1821(d)(6)(A), a claimant against an FDIC receivership may file suit on such claim "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located" and such court shall have jurisdiction to hear such claim.  Thus, jurisdiction and venue is proper in this Court.

### Standing

4.      The Trustee is a representative of the estate of K Capital.

5.      The Trustee is charged with administering the property of the estate for the benefit of the creditors of K Capital.  As such, the Trustee has standing to pursue these claims against K Capital.

### Facts Common to All Counts

I.  Overview

6.      K Bank was a wholly owned subsidiary of K Capital.

7.      Notwithstanding that K Bank and K Capital were nominally separate corporate entities, they joined together in a scheme to act as one unified entity, ignoring corporate formality and creditors' interests, by engaging in the loan transactions that are the subject of this Complaint.  The purpose of the scheme was to allow K Bank (a regulated banking institution) to participate in loans it could not have accomplished alone, without violating its charter and regulatory constraints by *de facto* sharing them with its parent, K Capital (a bank holding company).

8.      This scheme required the complicity of K Capital, and that complicity was achieved by the fact that the boards of the two nominally independent entities were populated by the same individuals who made decisions for both entities, despite conflicting interests. Furthermore, the two entities were consolidated on an accounting and tax basis.

2

9.      As part of the scheme, K Bank and K Capital each made simultaneous loans to the same borrowers, resulting in K Bank having a first position lien and K Capital a second position lien on the real estate collateral securing the loans.  Together, K Bank and K Capital provided the borrowers nearly 100% financing, and in some cases, greater than 100% financing, for the borrowers' projects.  K Bank could not have provided this level of loan-to-value lending on its own as the loans would not have been in compliance with their internal underwriting policies. This scheme was fraught with risk, risk cognized in the standard underwriting policies that prevented K Bank from lending 95% or more of the value of the collateral on its own. Not surprisingly, the majority of these loans defaulted and the risk became reality. The fact that K Capital holds a second position on these liens, means that risk has fallen and will continue to fall disproportionately on K Capital.

10.     The only fair and equitable treatment is to regard the loans as a single loan by the combined entities, with proceeds and payments shared *pari passu* proportionate to their original loan amounts.  This complaint seeks that relief, and the specifics of the scheme and the Trustee's resulting claims follow.

II.  The Joint Loans

11.     On information and belief, K Capital made a number of loans in conjunction with loans made by K Bank (the "Joint Loans").

12.     On information and belief, K Bank structured the Joint Loans transactions such that financing was provided to the borrower at not less than a 95% aggregate loan to value ratio.

13.     Typically, K Bank lent between 80% and 90% of the value of the real estate collateral secured by a first priority lien on the real estate collateral.

14.     K Bank arranged for K Capital to lend between 5% and 15% of the value of the real estate collateral secured by a second priority lien on the real estate collateral.

3

15.    K Bank only required the borrower to fund at most 5%.

16.    K Bank was the servicer for both K Bank and K Capital in the Joint Loans.

17.    Indicia of the parties' intent to make de facto Joint Loans rather than separate loans, and of the inequity, impropriety, and unfairness to K Capital's creditors by not treating the loans as single loans include:

18.

    a.  K Bank used its relationship with K Capital to provide inherently unsound loans that K Bank would have otherwise been unable or unwilling to make.

    b.  The boards of K Bank and K Capital were populated by the same individuals who made decisions for both entities, despite conflicting interests.

    c.  The financing extended by K Capital as part of the Joint Loans was not made with economic terms commensurate with the risk.

    d.  K Capital did not otherwise receive fair consideration or reasonably equivalent value for its participation in the Joint Loans.

19.    On information and belief, at the time the loans were initially funded, K Bank had promised or otherwise agreed to share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.  For example, if K Capital lent 20% of the total loan amount, K Capital was entitled to 20% of the proceeds of the loan payments and/or collateral at the time the proceeds were received.

## COUNT ONE
### (Unjust Enrichment)

4

20.     Plaintiff incorporates by this reference and re-alleges the above paragraphs as if fully set forth herein.

21.     By participating in the Joint Loans, K Capital conferred the following benefits on K Bank: K Capital enabled K Bank to complete loans it otherwise was unable or unwilling to make and K Capital took a second position lien while K Bank took a first position lien on the real estate collateral.

22.     K Bank was aware of and had knowledge of the benefits conferred on it by K Capital's participation.

23.     K Bank's acceptance and retention its superior lien position and accepting and acceptance and retention of the full proceeds of the Joint Loans it otherwise would have been unable to make but for K Capital's participation, make it inequitable for K Bank to retain these benefits without payment of their value.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the amount no less than $20,000,000, which is the estimated outstanding balance of K Capital loans made under this scheme.

## COUNT TWO
### (Promissory Estoppel)

24.     Plaintiff incorporates by this reference and re-alleges the above paragraphs as if fully set forth herein.

25.     On information and belief, K Bank had promised to share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.

26.     K Bank reasonably believed that its promise to share the proceeds of the loan payments and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received would induce K Capital to participate as a lender in the Joint Loans and take a lien position on the real estate collateral inferior to that of K Bank.

27.     In reliance on K Bank's promise, K Capital made a number of loans in conjunction with loans made by K Bank and received a second lien position on the real estate collateral behind K Bank.

28.     On information and belief, K Bank did not share the proceeds of the loan payments and/or collateral *pari passu* with K Capital as they were received.

29.     If K Bank's promise to share the proceeds of the payments on the Joint Loans and/or collateral *pari passu* with K Capital as they were received is not enforced, injustice will result because K Bank will retain all of the loan and/or collateral proceeds and K Capital will receive nothing by virtue of its second lien position.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the amount not less than $20,000,000, which is the estimated outstanding balance of K Capital loans made as part of the Joint Loans.**COUNT THREE**

**(Declaratory Judgment)**

30.     Plaintiff incorporates by this reference and re-alleges the above paragraphs as if fully set forth herein.

31.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), for the purpose of determining a question of actual controversy between the parties.

6

32.     K Bank promised or otherwise agreed to share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.

33.     On information and belief, K Bank did not share the proceeds of the loan payments and/or collateral sale *pari passu* with K Capital as they were received.

34.     K Capital maintains that past, current, and future proceeds of payments on the Joint Loans and/or collateral must be shared *pari passu* with K Capital based on the percentage each party contributed to the total loan.  Thus, there exists an actual controversy of a practicable issue between K Capital and K Bank within the jurisdiction of this court involving the rights of the parties to the past, current, and future proceeds of payments on the Joint Loans and/or collateral.

WHEREFORE, the Plaintiff demands:

A.     That this Court determine and adjudicate the rights and liabilities of the parties with respect to the proceeds of the payments of Joint Loans and/or collateral;

B.     That this Court find and declare that K Capital is entitled to receive its share, on a *pari passu* basis, of past, current, and future proceeds of payments on the Joint Loans and/or collateral based on the percentage it contributed to the total loan; and

C.     That this Court award the plaintiff such other and further relief as the court may claim to be necessary and proper.

### COUNT FOUR
### (Constructive Trust)

35.     Plaintiff incorporates by this reference and re-alleges the above paragraphs as if fully set forth herein.

36.     On information and belief, K Bank induced K Capital to take a second lien position on the collateral securing the Joint Loans, while K Bank took a first lien position, by promising or otherwise agreeing to share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.

37.     On information and belief, K Bank did not share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.  Rather, K Bank used the full proceeds of payments on the Joint Loans and/or collateral to satisfy the K Bank portion of the Joint Loan prior to any consideration of K Capital's outstanding loan balance.

38.     The FDIC has since been appointed receiver of K Bank's assets, tasked with recovering the maximum amount possible from the disposition of the receivership's assets to distribute to the receivership's creditors.

39.     The FDIC transferred many of K Bank's assets to M&T Bank Corporation.

40.     The receivership's creditors are unjustly enriched by K Bank's application of proceeds of the loans and/or collateral from the Joint Loans to the K Bank outstanding amounts prior to any funds being applied to the K Capital portion of the Joint Loans. .

WHEREFORE, the Plaintiff demands that this Court:

A.     Charge upon Defendant K Bank a constructive trust of the past, present, and current proceeds of payments on the Joint Loans and/or collateral;

B.     Order Defendant K Bank as constructive trustee to convey not less than $20,000,000, which is the estimated outstanding balance of K Capital loans made as part

of the Joint Loans. [add language]C.  Grant costs and such other and further relief as the court may claim to be necessary and proper.

**COUNT FIVE**
**(Accounting)**

41.     Plaintiff incorporates by this reference and re-alleges the above paragraphs as if fully set forth herein.

42.     Upon information and belief, K Bank promised or otherwise agreed to share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.

43.     Upon information and belief, K Bank did not share the proceeds of payments on the Joint Loans and/or collateral *pari passu* with K Capital based on the percentage each party contributed to the total loan, at the time the proceeds were received.  Rather, K Bank retained the full proceeds of payments on the Joint Loans and/or collateral.

44.     FDIC, as receiver of K Bank, refuses to allow K Capital to inspect its account books, records, and documents so that it may determine the full extent of the proceeds of payments on the Joint Loans and/or collateral.

WHEREFORE, K Capital demands that:

A.     Defendant FDIC, as receiver of K Bank, be ordered by a decree of this Court to fully and completely account for all proceeds of payments on the Joint Loans and/or collateral; and

B.     Plaintiff have such other and further relief as may be just and equitable.

9

Respectfully submitted,

Charles R. Goldstein, Trustee for the Estate
of K Capital Corporation
1 E. Pratt St., Suite 800
Baltimore, MD 21202
Telephone: (410) 454-6800
Facsimile: (410) 454-6801
charles.goldstein@protiviti.com